# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RAY BROWN,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES A. YATES,<br><br>    Respondent. | Case No.  1:10-cv-00219-LJO-SAB (HC)<br><br>FINDINGS AND RECOMMENDATION FOLLOWING EVIDENTIARY HEARING ON PETITIONER'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE DURING PLEA NEGOTIATIONS |

Petitioner, represented by counsel, is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On July 19, 2010, Petitioner filed his federal petition for writ of habeas corpus.  (ECF No. 1).  On February 3, 2011, Magistrate Judge Dennis Beck issued a findings and recommendations that recommended that the petition be denied.  (ECF No. 28).  On March 28, 2011, District Judge Lawrence O'Neill adopted the February 3, 2011 findings and recommendations and denied the petition for writ of habeas corpus.  (ECF No. 30).  Petitioner filed a notice of appeal.  (ECF No. 32).  On September 27, 2012, the Ninth Circuit Court of Appeals appointed counsel for Petitioner and issued a certificate of appealability with respect to whether trial counsel was ineffective for advising Petitioner to reject the prosecution's plea offer of four years, including whether Petitioner is entitled to an evidentiary hearing on this claim.  (ECF No. 35).

Pursuant to the mandate of the United States Court of Appeals for the Ninth Circuit in the

case of <u>James Ray Brown V. James A. Yates</u>, case no. 11-16131, the judgment of the district court was vacated and was remanded for further development of the record. The Ninth Circuit noted that "Brown's state habeas petition and memorandum of law, offered under penalty of perjury, provide the only evidence in the record pertaining to the legal advice offered by his trial counsel regarding the state's plea offer." The Ninth Circuit also noted that, "[r]egarding prejudice, however, Brown may be able to demonstrate 'a reasonable probability that …[he] would have accepted the plea and the prosecution would not have withdrawn it…, that the court would have accepted its terms, and that the conviction or sentence…would have been less severe than [what was] imposed.'" Therefore, there is only one claim before the district court at this time concerning whether Petitioner received ineffective assistance of counsel during plea negotiations based on his counsel telling him that he could not be convicted.

# I.

# STATEMENT OF FACTS

On August 28, 2015, the undersigned held an evidentiary hearing on Petitioner's claim that he received ineffective assistance of counsel during plea negotiations because his trial counsel told him that he could not be convicted. Jerome Price and Lisa Sciandra appeared on behalf of Petitioner. Justain Rily appeared on behalf of Respondent. Petitioner, Sheray Brown, Sherry Ball, and Briniece O'Guinn testified for Petitioner. Ralph Torres testified for Respondent.

### A. Petitioner's Testimony

Petitioner testified that while he was in jail on charges of shooting at an occupied vehicle with gang enhancements, Torres visited him, notified him of the charges, and told him that there were two witnesses against him, Fulmer and Stanfield, who made statements identifying Petitioner as the shooter. (TR 73-74).[1] The case had a preliminary hearing where police officers testified, but not Fulmer and Stanfield. (TR 75-76). Petitioner testified that after the preliminary hearing, the prosecutor offered a seven year state prison plea offer. (TR 75-76). Petitioner

---

[1] "TR" refers to the transcript of the August 28, 2015 evidentiary hearing.

1 testified that subsequently that offer was reduced to a four year state prison term. (TR 75-76).

2 Petitioner testified that Torres told Petitioner that Fulmer and Stanfield recanted, and
3 "that [the prosecution] don't got nothing against [Petitioner]." (TR 77). Torres stated that the
4 prosecution would have nothing else in terms of evidence against Petitioner because Stanfield
5 and Fulmer had recanted. (TR 78). Torres seemed sure "he could beat the case." (TR 77).
6 Petitioner wanted to accept the four-year prison offer, but his mother and girlfriend advised him
7 that he should trust his lawyer. (TR 80). Petitioner testified that he trusted Torres, so he would
8 have followed Torres' advice. (TR 92; 105-106). Petitioner testified that Torres never told him
9 that he could get convicted, stating that at worst, Petitioner would get a hung jury. (TR 92; 105-
10 06). Petitioner never asked Torres about the possibility of getting convicted at trial. (TR 115-
11 116).

12 Petitioner testified that Torres did not tell him that if he was convicted at trial, he would
13 receive life in prison, so when the trial court advised him of that, it was the first time he heard it.
14 (TR 127-131). Petitioner did not ask Torres what the trial court meant. (TR 115-116).
15 Petitioner did not remember Torres telling the trial court that Petitioner needed to talk to his
16 mother considering the possibility of conviction. (TR 111; 118).

17 **B. Briniece O'Guinn's Testimony**

18 Briniece O'Guinn testified that she dated Petitioner for years prior to his arrest and that
19 the two had two children together. (TR 9-12). She testified that she had attended all of
20 Petitioner's court dates prior to the actual trial. (TR 17-18). However, she did not remember the
21 trial court advising Petitioner that he faced the possibility of life in prison. (TR 50). She
22 testified that if she had heard the trial court say that Petitioner could face life in prison, she
23 would have advised him to accept the four-year plea offer. (TR 52-53). She testified that she
24 had conversations with Torres about Petitioner's case and that these conversations were just
25 between the two of them. (TR 23). Torres never spoke to Petitioner in front of her or asked her
26 to give Petitioner any information. (TR 23, 23).

27 She testified that Petitioner received progressively lower offers for a plea deal from the
28 prosecution, including a four-year prison offer on the eve of trial. (TR 19-22). She testified that

3

1 Petitioner was ready to accept the four-year offer, but Torres told her that he could beat the case.
2 (TR 23-25). Torres told her that Fulmer and Stanfield recanted. (TR 26). Torres stated he
3 would beat the case because the recantations resulted in insufficient evidence of guilt. (TR 26).
4 However, Torres did tell her that Petitioner faced tends of years imprisonment if he was
5 convicted, but more likely four years. (TR 39-40).

### C. Sherry Ball's and Sheray Brown's Testimony

Petitioner's mother, Sherry Ball, and his sister, Sheray Brown, testified that they each attended only the last part of the trial. (TR 62, 66, 68). They both testified that during the trial Torres said that the prosecution had offered a four-year deal and that he thought he could beat the case. (TR 64, 66-67). Both Petitioner's mother and sister did not witness any conversations that Torres had with Petitioner. (TR 64, 66-67).

### D. Ralph Torres's Testimony

Ralph Torres testified that he worked for the Fresno County Public Defender's Office at the time that he represented Petitioner, and that he worked for them for eighteen years, five of them with the major crimes team. (TR 133, 135). He testified that he has represented approximately a thousand clients, done approximately one-hundred-and-fifty felony trials, and done several murder trials. (TR 134, 146). In 2005, he represented Marcus Wesson as co-counsel in the guilt phase of the death penalty murder trial.[2] (TR 134).

Torres could not remember any specific advice that he offered regarding the four-year plea offer or any conversation that he had with Petitioner around the time of trial. (TR 135, 163, 165). Torres testified as to his common practice that when he received an offer, he would present that offer to the client, explain the possibility of going to trial and losing, and the likelihood of success at trial. (TR 136). He testified that he did not recommend to a client to accept or reject a plea offer and that he would just give his best estimate of what might happen at trial. (TR 136). He testified that he would not promise a win. (TR 137, 142, 166). Torres

---

[2] The Court takes judicial notice that the Marcus Wesson case in the Fresno County Superior Court was a death penalty trial in which the defendant was convicted of nine murders and fourteen sexual offenses in which he received the death penalty.

4

testified that he was sure that he never promised any of his clients an outcome of their case. (TR 1370. He testified that he allowed the client to make the decision to plead guilty after advising them as to the strengths and weaknesses of a case. (TR 137-138, 161-162). He testified that he knew at the time of Petitioner's trial that a witness's inconsistent prior statement could be admitted at a trial, so he would have explained to a client that any prior statement could be admitted at a trial. (TR 142-144).

## II.

## LEGAL STANDARDS

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97-98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). If the

Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Ninth Circuit Court of Appeals determined that Petitioner rebutted the presumption of correctness afforded to state court factual findings in habeas proceedings. See 28 U.S.C. §2254(e)(1). Therefore, the Court reviews de novo whether Petitioner is entitled to relief on his claim of ineffective assistance of counsel.

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland, 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.") (citing Strickland, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Strickland, 466 U.S. at 669.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 131 S.Ct. at 787 (internal citation omitted). A reviewing court may review the prejudice prong first.

See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697) (holding that a court may dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice before determining whether counsel's performance was deficient).

## III.

## DISCUSSION

Petitioner contends that he was denied effective assistance of counsel during plea negotiations. The prosecutor offered Petitioner a deal of four years in exchange for a guilty plea to assault with a firearm and firearm use. Petitioner declined the offer. Petitioner claims his counsel told him that he "could not be convicted at trial because witnesses had recanted their incriminating statements" and that "at worst, he would get a hung jury." Petitioner claims his counsel did not tell him he could be convicted based solely on the witnesses' prior statements. Petitioner contends had he been aware of such possibility, he would have taken the plea deal. Respondent argues that the Court should find Torres credible and find that Petitioner has not supported his claim.

A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent" and must be made with sufficient information of the relevant circumstances and likely consequences resulting from the waiver of certain constitutional rights. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-244 (1969). Voluntariness is determined by looking at the tangible evidence in the record, as determined by the totality of the circumstances surrounding the plea. Id. The defendant must make the decision "with the help of counsel, [and] rationally weigh the advantages of going to trial against the advantages of pleading guilty." Brady v. United States, 397 U.S. at 750.

The decision to reject a plea bargain offer and go to trial is a critical stage of the proceedings. In Hill v. Lockhart, 474 U.S. 52, 56-57 (1985), the Court held that the voluntariness of a guilty plea depends on the adequacy of counsel's legal advice. The first "inquiry is whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002). Then the Court must determine whether, "but for counsel's errors, [the defendant] would have pleaded guilty and

would not have insisted on going to trial. Id. If the defendant has been informed of the plea offer, the question to determine is whether counsel's "advice was within the range of competence demanded of attorneys in criminal cases. Id. at 880 (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)). Thus, Petitioner "must demonstrate gross error on the part of counsel[.]" Id. (quoting McMann, 397 U.S. at 771).

Here, Petitioner's claim that counsel told him he could not be convicted at trial because witnesses had recanted their incriminating statements and that, "at worst he would get a hung jury," is not adequately supported by the record, including the testimony that was adduced at the Court's August 28, 2015 evidentiary hearing.

The Court finds Torres credible. Torres candidly admitted at the evidentiary hearing that he did not remember any specific conversations that he had with Petitioner. Torres was an experienced criminal defense attorney, who had worked for the Fresno Public Defender's Office at the time he represented Petitioner. (TR 133). Torres worked for the Public Defender's Office for eighteen years, five of them with the major crimes team. (TR 133, 135). Torres has represented approximately a thousand clients, done approximately one-hundred-and-fifty felony trials, and done several murder trials. (TR 134, 146). In 2005, right before he represented Petitioner, he represented Marcus Wesson as co-counsel in the guilt phase of the death penalty murder trial, which was a six month trial. (TR 134). Therefore, Torres is a very experienced criminal defense attorney. Torres testified as to his common practices and the Court notes that there were no inconsistencies in Torres's testimony. Therefore, the Court finds Torres credible.

However, the Court gives less weight to Petitioner's testimony and to O'Guinn's testimony, as there are inconsistencies between the testimony of O'Guinn and Petitioner, as well as inconsistencies with other evidence in the record. The Court finds that Ball and Brown are credible, but notes that their testimony is not relevant to Petitioner's claim concerning whether Torres advised Petitioner that he could not be convicted as neither actually witnessed any conversation between Petitioner and Torres or had a conversation with Petitioner about the conversations where Torres allegedly stated that he could beat the case.

Here, Petitioner's claim is that he was advised by Torres that he could not be convicted

1  and that "at worst he would get a hung jury." Torres testified that he never would have told a
2  client that he could not have been convicted, and the Court finds this testimony credible.
3  Although Torres did not specifically recall the advice that he gave to Petitioner in his case,
4  Torres testified as to his usual, customary practices. Torres unequivocally stated that he would
5  not have told a client that he could not have been convicted. Furthermore, the Court notes that
6  Torres testified that he was aware at the time of Petitioner's trial that the prosecution could use a
7  recanting witness' prior statements at the trial. It defies logic that Torres would advise Petitioner
8  that he could not be convicted because of witness' recantation, when Torres testified that at that
9  time, he had been aware that the prosecution could present a recanting witness' prior statements
10 during a trial.

11 The Court does not find that Petitioner was advised by Torres that even in the worst case
12 scenario, he would avoid conviction. Torres admitted that he may use the term "beat the case,"
13 and that it means winning at trial. (TR 137). However, the Court notes that Torres saying that
14 he thought he could "beat the case" is not the same as Torres saying that Petitioner could not be
15 convicted. An attorney saying that he could "beat the case" is an opinion that attorney has of the
16 case, and is merely a possibility of what the outcome at trial might be, and not a statement about
17 a legal impossibility. Furthermore, Petitioner's testimony does not support his contentions.
18 Petitioner testified that he would have listened to the advice of Torres and done what Torres said,
19 but then he needed to speak to his family before deciding about the plea deal.

20 Therefore, based on the record, the Court does not find that Torres told Petitioner that he
21 could not be convicted at trial, a legal impossibility. The Court finds that Torres did not provide
22 deficient representation to Petitioner as required by Strickland. Thus, Petitioner cannot meet the
23 first Strickland prong.

## IV.

## RECOMMENDATION

27 Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas
28 corpus be DENIED. This Findings and Recommendation is submitted to the assigned United

9

States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 5, 2016**

UNITED STATES MAGISTRATE JUDGE